**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Ruskin Lee RECTOR,
Defendant–Appellant.**

**No. 15415.**

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 11, 1988.

---

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Tim Wynes, Joplin, for defendant-appellant.

GREENE, Judge.

After waiving trial by jury, Ruskin Lee Rector was court-convicted of the felony of manufacturing a controlled substance, § 195.020,[1] and sentenced to five years' imprisonment in the custody of the Missouri Department of Corrections as punish-ment for the crime. Ruskin appeals, contending the trial court erred in overruling his motion to suppress, and objections at trial to the state's use of Rector's extrajudicial admission that marijuana plants found growing on his father's farm belonged to Ruskin. We affirm.

The facts of the case are as follows. On August 8, 1986, Barton County Sheriff William Griffitt, armed with a search warrant, went to the farm of Gary Rector, who was Ruskin Rector's father, in order to search a camper unit that was occupied by Ruskin. Griffitt was looking for illegal controlled substances. During the search, the sheriff found some marijuana and arrested Ruskin on the charge of possessing a controlled substance. At the time of the arrest, the sheriff read Ruskin his *Miranda* rights, which included the information that Ruskin had the right to remain silent, that anything he said could be used against him in a court of law, that he had a right to a lawyer and to have him present when Ruskin was questioned, and if Ruskin could not afford to hire a lawyer, one would be appointed for him. Ruskin indicated he understood those rights, and that he wanted to talk to the sheriff.

Griffitt then asked Ruskin "if he knew of anymore illegal substance and he replied, 'no.'" Griffitt then asked Gary Rector if he could search the rest of the farm for illegal controlled substances, and Gary Rector told him he could. The sheriff and his deputies found six marijuana plants growing in buckets and a box about 100 feet east of the camper where Ruskin lived. The plants were found within 15–20 minutes of the time when Ruskin's rights were explained to him by the sheriff. Immediately after the plants were found, Sheriff Griffitt "went directly back to Rusty (Ruskin) and talked with him again." Ruskin was told he "was still under the Miranda Right that, you know, he didn't have to talk to me if he didn't want to," and "that he could have an attorney present." No more than 20 minutes had elapsed between the time the sheriff read Ruskin his rights and when he talked with him the second time.

1. Unless indicated otherwise, all references to statutes are to RSMo 1978, V.A.M.S.

Griffitt asked Ruskin if he knew anything about the marijuana plants the sheriff had just found and Ruskin said, "Yes." He was then asked if any more marijuana was being grown on the farm. Ruskin pointed to an area northeast of the camper and said "there was approximately 10 plants down there between the two orange posts in the pasture." Ruskin told the sheriff that all of the plants belonged to him. The marijuana plants were used as the basis for the state's charge against Ruskin that is the subject matter of this appeal.

In his brief filed here, Ruskin asserts that his statements made to Sheriff Griffitt concerning the location of the marijuana plants and his ownership of them were "involuntary" in that they were made after he was in custody on a separate charge and were made after an "incomplete *Miranda* warning." The substance of this assertion is Ruskin's claim that because he was being questioned about a crime (manufacturing marijuana) other than the crime for which he had been arrested (possessing marijuana), it was required that he receive a second complete *Miranda* warning. Such a premise is not the law. *State v. Fields*, 536 S.W.2d 56, 58 (Mo.App.1976).

Where a suspect in custody has been fully advised as to his constitutional rights regarding self-incrimination, which was the case here, the fact that the *Miranda* warnings are not repeated before a second questioning, which occurs a short time later and which involves questions concerning a crime other than the one which was the basis for the suspect's arrest, does not render incriminating statements made during the second interrogation involuntary and, therefore, inadmissible. *State v. Harvey*, 609 S.W.2d 419, 423 (Mo.1980); *State v. Fields*, supra. A delay as long as two hours between the *Miranda* warning given prior to the first interrogation and the commencing of the second interrogation has been held not to be prejudicial. *State v. Woodward*, 587 S.W.2d 287, 289 (Mo.App. 1979). Here, the delay was 20 minutes or less. Under the facts of the case, a second *Miranda* warning was not required.

In an abundance of caution, we have searched the record to determine if there was any evidence that Ruskin Rector was deprived of a free choice to admit or deny ownership, or refuse to answer questions concerning ownership of the marijuana plants. We find no such evidence. At the time of the complained of questioning, Ruskin was being held under a lawful custodial arrest. He had been fully advised concerning his right against self-incrimination 15 or 20 minutes earlier, he was on his father's farm, and his father was present, and he was reminded that he was still entitled to the benefit of his constitutional rights before the second questioning began. Ruskin voluntarily waived his right to remain silent prior to the second interrogation. We find no error.

Judgment affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.